United States District Court
Southern District of Texas
**ENTERED**
February 01, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID RAMIREZ, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:21-cv-03780 |
| | § | |
| KILOLO KIJAKAZI, *Acting* | § | |
| *Commissioner Social Security* | § | |
| *Administration,* | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION

Plaintiff David Ramirez ("Ramirez") seeks judicial review of an administrative decision denying his applications for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Ramirez and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 11, 12. After reviewing the briefing, the record, and the applicable law, I recommend that Ramirez's motion for summary judgment (*see* Dkt. 11) be **DENIED**, and the Commissioner's motion for summary judgment (*see* Dkt. 12) be **GRANTED**.

### BACKGROUND

Ramirez filed an application for disability insurance benefits under Titles II and XVI on October 28, 2019, alleging disability beginning on April 25, 2018. His applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Ramirez was not disabled. Ramirez filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

**APPLICABLE LAW**

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g).[1] *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

---

[1] Ramirez instituted this action five days later than the time allow under 42 U.S.C. § 405(g). The Commissioner, having not raised the issue in her motion for summary judgment, has waived this defense. *See Weinberger v. Salfi*, 422 U.S. 749, 764 (1975).

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Ramirez had not engaged in substantial gainful activity since April 25, 2018. *See* Dkt. 8-3 at 18.

The ALJ found at Step 2 that Ramirez suffered from "the following severe impairments: residual effects of gunshot wound, hernia, mood disorder, post-traumatic stress disorder, and anxiety." *Id.*

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Ramirez's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant is able to lift, carry, push, or pull a maximum of ten pounds. He is able to stand or walk two hours out of an eight-hour workday and he is able to sit six hours out of an eight-hour workday. He is able to climb stairs or ramps occasionally, but must avoid climbing ladders, ropes, scaffolds. He is able to balance, stoop, kneel, crouch, or crawl occasionally. The claimant is able to understand, remember, and carry out simple instructions and perform simple, routine tasks. He is able to interact with co-workers and supervisors occasionally, but must avoid interaction with the general public. He is able to perform work in a routine setting involving few, if any,

3

changes. He is able to perform work that does not require independent planning or goal setting.

*Id.* at 20–21.

At Step 4, the ALJ found that Ramirez is unable to perform any past relevant work. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Ramirez] can perform." *Id.* at 25. Based on the Medical-Vocational Rules, the ALJ explained that Ramirez is not disabled. *See id.*

## DISCUSSION

This social security appeal raises three issues: (1) whether the ALJ failed to consider all the evidence in the record; (2) whether the ALJ's RFC adequately provides for all the limitations resulting from Ramirez's impairments; and (3) whether the Appeals Council erred in refusing to consider additional evidence. I will address each issue separately.

### A. WHETHER THE ALJ PROPERLY CONSIDERED THE ENTIRE RECORD

Because Ramirez filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). "Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources." *Id.* (citing 20 C.F.R. § 404.1520c(b)(2)). "In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) 'other factors that tend to support or contradict' the opinion." *Id.* (citing § 404.1520c(c)). "The most important factors in evaluating persuasiveness are supportability and consistency." *Id.* (citing § 404.1520c(b)(2)).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 1:20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

Ramirez argues that the ALJ "cherry picked" and misread certain medical evidence from his primary care physician, Dr. Robert M. Castillo ("Dr. Castillo"). Dkt. 11 at 12. Ramirez first takes issue with the ALJ for "fail[ing] to note that [a] particular page [from Dr. Castillo's records] contains a[n] assessment of PTSD and referral to a Psychiatrist." *Id.* To start, I note that "an exhaustive point-by-point discussion" of all the evidence in the record is not required. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). What is required is that the ALJ provide enough reasoning for me to determine "whether her decision is based on substantial evidence or not." *Id.* Second, I fail to see the relevance in citing this particular note. As Ramirez acknowledges, the ALJ quoted Dr. Castillo's notes regarding Ramirez's anxiety and difficulty interacting in large groups of people. *See* Dkt. 11 at 12.

Moreover, the ALJ found at Step Two that Ramirez suffers from PTSD. *See* Dkt. 8-3 at 18. The ALJ was clearly aware of Ramirez's PTSD diagnosis and Dr. Castillo's assessment. I will not fault her for failing to recite Ramirez's medical records in full.

Second, Ramirez argues that the ALJ misread Dr. Castillo's February 2020 Certification of Disability. The Certification is a one-page form with fill-in boxes for "7. Limitations on sitting, standing, walking, or lifting"; "8. Limitations on activities of daily living"; "9. Residual functionality"; "10. Social/behavioral limitations (if any)'" and "11. Global Assessment Function Score (for psychiatric conditions)." Dkt. 8-18 at 26. Dr. Castillo completed only box 10 in the limitations section, writing that Ramirez "has difficulty dealing with people" and "is being referred to psychiatrist." *Id.* Dr. Castillo wrote nothing in boxes 7–9 or box 11. Referring to the Certification of Disability, the ALJ stated that "Dr. Castillo indicated that [Ramirez] had no limitation in activities of daily living." Dkt. 8-3 at 23. Ramirez argues this was error because the fact that "Dr. Castillo did not address limitation of daily living in this form . . . does <u>not</u> equate to <u>no</u> limitations." Dkt. 11 at 13. This argument turns on the form's instructions, which provide that physicians should enter "N/A" if not applicable. Dkt. 8-18 at 26. Ramirez argues that because "Dr. Castillo did <u>not</u> enter 'N/A' . . . the ALJ's conclusion is incorrect." *Id.* at 14. I am, frankly, befuddled by this argument. Even if I accept Ramirez's argument—that there is a functional difference between leaving a section blank and writing "N/A"—I fail to see the significance, because the ALJ found Dr. Castillo's opinion "unpersuasive." Dkt. 8-3 at 23. Specifically, the ALJ found Dr. Castillo's opinion "unsupported by his mental status examinations" and "inconsistent with his treatment records" which "weeks earlier . . . said [Ramirez's] mental findings were within normal limits, that [Ramirez] was 'functional,' and had a 'stable mood.'" *Id.* (quoting Dkt. 8-18 at 18). Accordingly, the ALJ properly considered Dr. Castillo's opinion, found it unpersuasive and inconsistent, and provided ample explanation for her finding.

Finally, Ramirez argues that "the ALJ failed to address [Ramirez's] psychiatric symptoms when he was evaluated by Psychiatrist Ruben Mendez, M.D. on November 4, 2020." Dkt. 11 at 12. Ramirez contends that the ALJ misstated the record when she wrote that Ramirez's mental condition at this visit was "normal." *Id.* According to Ramirez, "it was <u>not</u> [normal]" because Dr. Mendez's assessment included diagnoses of Bipolar 1 disorder, psychosis, and PTSD. *Id.* at 12–13. Ramirez reaches too far with this argument. When properly managed with medication or otherwise treated, a patient with a psychiatric diagnosis may nevertheless present with a normal mental condition. The notes from the page at issue demonstrate this fact:

General Appearance: well-appearing
Speech: normal rate, rhythm, volume and tone.
Thought Content: No thought disorder
Thought Process: thought process is logical
Perception: no auditory hallucinations, no visual hallucinations
Concentration/Memory: No impairment noted
Mood: was anxious and was depressed
Affect: was anxious
Insight: good insight
Judgement: good judgement
Estimated Intelligence: the estimated intelligence was average

Dkt. 8-19 at 5. Accordingly, the ALJ did not misread the record.

Ramirez also argues that the Global Assessment of Functioning score issued by Dr. Mendez, which indicated "only slight impairments . . . is an anomaly and is wholly out of place when the November 2020 evaluation is viewed in its totality." Dkt. 11 at 13. Notably, the ALJ found this statement only "somewhat persuasive." Dkt. 8-3 at 24. She observed that although it is "supported by a treatment record . . . it is inconsistent with the symptoms that [Ramirez] report to [Dr. Mendez]." *Id.* Again, the ALJ properly considered Dr. Mendez's opinion, found it somewhat persuasive, and provided ample explanation for her finding. Ramirez has pointed me to no evidence so contradictory to the ALJ's opinion that I could make a finding of no substantial evidence. It is not for me to reweigh the evidence;

I can only ask if there is a logic bridge between the ALJ's persuasiveness finding the evidence. In this case, there is.

**B.   WHETHER THE ALJ'S RFC ENCOMPASSES RAMIREZ'S LIMITATIONS**

Ramirez next argues that a "second error was committed . . . at Step Five due to the fact that the [ALJ's RFC] failed to encompass all of Movant's limitations." Dkt. 11 at 5. This argument is a tad confusing because the ALJ crafts the RFC between Steps Three and Four, not at Step Five. *See Kneeland*, 850 F.3d at 754 ("Before reaching step four, the Commissioner assesses the claimant's residual functional capacity ("RFC"). . . . The RFC is used in both step four and step five to determine whether the claimant is able to do her past work or other available work."). It appears that Ramirez is contending that the RFC itself is defective. *See* Dkt. 11 at 17 (arguing that the RFC "failed to encompass all of [Ramirez's] limitations). To the extent Ramirez believes the ALJ's RFC is error because she discounted the opinions of Drs. Castillo and Mendez, I have already explained why the ALJ's analysis of those medical opinions comports with the new regulations. Thus, I agree with the Commissioner that the ALJ properly incorporated all of Ramirez's limitations *that are supported by substantial evidence* into her hypothetical questions to the vocational expert, Mr. Thomas W. King ("Mr. King"). *See* Dkt. 8-3 at 48–50 (the ALJ's hypothetical #2, which incorporated hypothetical #1, encompassed all of Mr. Ramirez's limitations that are supported by substantial evidence).

To the extent Ramirez is challenging the ALJ's Step Five finding that other work existed that Ramirez could perform, Ramirez's argument appears to turn on the following exchange between the ALJ; the vocational expert ("VE"), Mr. King; and Ramirez's attorney, Mr. James F. Andrews ("Mr. Andrews"):

> [ALJ]: In your opinion, what percentage of the workday can an individual be off task and still maintain competitive employment?
>
> [VE]: 15% or less, Judge.

> [ALJ]: How often can an individual be absent from work and still maintain competitive employment?
>
> [VE]: One – one day or less, Judge.
>
> [ALJ]: Is that on a monthly basis?
>
> [VE]: Yes, it is.
>
> [ALJ]: Mr. Andrews, do you have any questions for Mr. King?
>
> [Mr. Andrews]: Your Honor, in light of the last few questions that you have asked Mr. King which I submit fit the facts of this case, I have no questions of Mr. King, Your Honor.

Dkt. 8-3 at 50.

At Step Five, the ALJ is required to show "that [Ramirez] can perform other substantial work in the national economy." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The ALJ carried that burden here because she "scrupulously incorporated into the hypothetical questions [to Mr. King] all of [Ramirez's] disabilities supported by evidence and recognized by the ALJ." *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). Once the ALJ demonstrated that there exists other work in the national economy that Ramirez can perform, the burden shifted to Ramirez "to prove that he could not perform the kinds of jobs identified by [the vocational expert]"). *Id.*

Ramirez maintains that "he would [] indeed be off task more than fifteen percent and would miss more than one work day per month." Dkt. 11 at 17. Yet, Ramirez's counsel offered no argument at the hearing beyond the conclusory statement that "the last few questions that you have asked Mr. King . . . fit the facts of this case."[2] Dkt. 8-3 at 50. This is not enough. To start, saying that "the last few

---

[2] Even now, the sum of Ramirez's argument is a recitation of case law without applying any of that law to the facts of his case. Moreover,

> [Ramirez's] reliance on *Nguyen* is misplaced. [In *Nguyen*], the ALJ did not address a provider's ultimate opinion that the claimant was incapacitated by severe pain and no opinion evidence supported the ALJ's RFC finding.

questions fit the facts of this case" could be interpreted either way. It could mean that Ramirez would never be off task more than 15% of a workday and would never miss more than one day of work a month, just as easily as it could mean the opposite. It was Ramirez's burden to demonstrate "that his condition 'waxes and wanes' in intensity such that his ability to maintain employment was not adequately taken into account in his RFC determination." *Perez*, 415 F.3d 457, 466 (5th Cir. 2005) (quotation omitted). Simply saying "those last few questions sound like my case" is not enough. Because the ALJ "allowed counsel to cross-examine the vocational expert extensively, including the subject matter of the challenged hypothetical," and Ramirez "offered no evidence that [he] was incapable of performing the types of work that the ALJ determined were available and that [he] was capable of performing, [Ramirez] failed to meet [his] burden of proof." *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

## C.  WHETHER THE APPEALS COUNCIL PROPERLY REFUSED TO CONSIDER ADDITIONAL EVIDENCE

Ramirez's final point of contention is that the Appeals Council erred when it refused to consider a report by Dr. Mendez issued two months after the ALJ's decision. The Appeals Council rejected the report because it "does not relate to the period at issue." Dkt. 8-3 at 3. Ramirez argues that "the Appeals Council applies an erroneous standard if it narrowly construes the regulations as drawing a bright line based upon the date of [the] submitted evidence." Dkt. 11 at 21 (quoting *Johnson v. Berryhill*, No. 4:16-CV-0241-O-BL, 2017 WL 2964882, at *6 (N.D. Tex. June 26, 2017)). I agree, but that is not the end of the inquiry. Ramirez "must still show prejudice from the [Appeals Council's] failure to consider the newly submitted

---

On those facts, the court commented that the ALJ was not qualified to "interpret raw medical data." *Nguyen*, 172 F.3d at 35. Here, in contrast, [Ramirez] does not point to opinion evidence or objective findings that the ALJ failed to consider.

*Madison L. v. Kijakazi*, No. 20-CV-06417, 2021 WL 3885949, at *8 (N.D. Cal. Aug. 31, 2021) (citing *Nguyen v. Chater*, 172 F.3d 31 (1st Cir. 1999)).

evidence." *Ayala v. Berryhill*, No. 4:17-CV-00783-O-BP, 2018 WL 1470626, at *5 (N.D. Tex. Mar. 8, 2018). Ramirez "does not succeed in showing prejudice" by arguing simply "that the [Appeals Council's] error is in itself harmful, based on *Johnson*." *Id.* (refusing to remand where "[n]othing in this new evidence suggests that, had the [Appeals Council] considered it, it would have changed its decision to deny . . . review"). Yet that is all Ramirez has done here, and nothing more.

It is worth taking a moment to contrast the evidence at issue in *Johnson* and the evidence that Ramirez submitted to the Appeals Council. In *Johnson*, the newly submitted evidence consisted of 25 pages, including a Functional Capacity Evaluation, a Vocational Evaluation Report, and a Psychological Evaluation that included "numerous medical opinions." *Johnson*, 2017 WL 2964882, at *7. Here, what is at issue is nothing more than a one-page letter and the following six sentences:

> David Ramirez . . . is a psychiatric patient under my care for his conditions of gunshot related [PTSD] with psychotic symptoms. Mr. Ramirez has symptoms of severe anxiety and bouts of paranoid delusions. He has very poor capacity to concentrate and complete any tasks that involve following close directions. He is not able to cooperative [sic] with other people in a work related environment. His condition is severe and chronic and not likely to improve significantly. It is highly recommended that Mr. Ramirez be granted full disability from a psychiatric standpoint.

Dkt. 8-3 at 9. The first sentence offers no substance, and the last sentence is a "conclusory statement on an issue reserved to the Commissioner" that "provides no reasonable possibility of any altered outcome." *Johnson*, 2017 WL 2964882, at *8 n.10. The ALJ was already aware that Dr. Mendez was treating Ramirez for paranoid delusions. *See* Dkt. 8-3 at 23 ("Dr. Mendez prescribed [Ramirez] Zoloft and Seroquel for agitation and paranoid delusions."). The ALJ was also aware of Ramirez's anxiety because she found that it was a severe impairment at Step Two. *See id.* at 18. Accordingly, the first, second, and fifth sentences could not possibly add anything to the ALJ's analysis. As for the remaining sentences, they are not accompanied by any medical evidence. Accordingly, there is no reason to think that

consideration of this evidence would have changed the Appeals Council's decision to deny review. *See Ayala*, 2018 WL 1470626, at *5.

## CONCLUSION

For the reasons stated above, I recommend that Ramirez's motion for summary judgment (*see* Dkt. 11) be **DENIED**, and the Commissioner's motion for summary judgment (*see* Dkt. 12) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 1st day of February 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE